UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINA PARKS,

                Plaintiff,

v.                                 **DECISION AND ORDER**
                                          17-CV-631S
BUFFALO CITY SCHOOL DISTRICT,

                Defendant.
_____

## I. INTRODUCTION

In this action, Plaintiff Christina Parks, an African-American female, alleges that her employer, Defendant Buffalo City School District ("the District"), discriminated and retaliated against her based on her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the New York Human Rights Law ("NY HRL"), N.Y. Exec. Law § 296; the Civil Rights Act of 1991, 42 U.S.C. § 1981 (b); and the Equal Protection Clause of the Fourteenth Amendment through 42 U.S.C. § 1983.

Presently before this Court is the District's motion to dismiss Parks's complaint under Rule 12 (b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Docket No. 4.) For the following reasons, the District's motion is granted in part and denied in part.

## II. BACKGROUND

The following facts, drawn from Parks's complaint and the exhibits attached thereto, are accepted as true for purposes of adjudicating the District's motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as

1

true all of the factual allegations contained in the complaint." (internal quotation marks omitted)).

Parks began working for the District in its Transportation Department in 1984 as a data control clerk. (Complaint, Docket No. 1, ¶ 8.) The District thereafter promoted her from civil-service-eligible lists to computer operator in 1989, computer programmer in 1990, systems analyst (grade 18) in 1999, and systems analyst (grade 19) in 2015. (Id. ¶¶ 9, 50.) But shortly after Parks's promotion to systems analyst in 1999, the District stopped promoting her or hiring her for more advanced positions in favor of hiring Caucasian employees who often had less experience and less seniority. (Id. ¶¶ 10-11, 78.)

For example, when Parks moved laterally in September 2002 to replace the retiring Guy Latona, a Caucasian male who had been the computer systems engineer coordinator (grade 21), the District downgraded Latona's vacated position to systems analyst (grade 18). (Id. ¶¶ 12-14, 20.) In 2007, the District denied Parks's request for a promotion to data base administrator. (Id. ¶ 16.) In August 2010, the District promoted two of Parks's systems analyst colleagues, both Caucasian, to system administrators (grade 20), but did not similarly promote Parks. (Id. ¶¶ 19, 31.) In 2011, James Kane, Chief of Staff, failed to act on Parks's request for a promotion and for additional training. (Id. ¶¶ 35, 75.) In January 2013, Parks applied for a systems administrator position but received no response. (Id. ¶ 40.) In June 2013, Parks applied for a senior systems administrator position, but did not receive the position after Paul Bonvissuto, an individual below Parks on the system-administrator list, was hired instead. (Id. ¶¶ 40, 67, 68.) In September

2

2015, Parks emailed the Director of Transportation a request to be promoted, but he ignored her request.  (Id. ¶¶ 47, 48.)

Parks also complains of harassment and disparate treatment over the years.  For example, Parks's predecessor, Latona, had the assistance of a data control clerk and multiple computer programmers, but Parks did not.  (Id. at ¶ 26.)  Latona also had a job title and pay grade that "allowed him to do his job with recognition and the protection of IT," but Parks did not.  (Id. ¶ 31.)  Parks's co-workers (Karen Carnevale and Cheryl Kennedy) installed monitoring software on her computer to track her daily activities, and on an occasion during the summer of 2013, Parks's supervisor, Mary Ann O'Neil, sat directly behind her for a day to monitor what she was doing.  (Id. ¶¶ 23, 41.)  Also, beginning in June 2013, the District stripped Parks of her overtime opportunities, resulting in the loss of thousands of dollars per year.  (Id. ¶¶ 37, 38.)  On an occasion in August 2015, Parks's supervisor, Robin Craddock, reprimanded her for not completing a task that Parks was previously told was "no rush."  (Id. ¶ 49.)

Parks maintains that she also experienced a diminution in her position.  In 2004, the Transportation Department computer network that Parks controlled was incorporated into the Buffalo Public Schools network but remained under Parks's "total and sole control and administration."  (Id. ¶ 12.)  But in 2010, someone from the IT department physically removed one of the Transportation Department servers that Parks controlled to prevent Parks from claiming an upgrade or promotion, and Parks was forced by threat of insubordination to explain how the removed server worked.  (Id. ¶ 22.)  Other of Parks's tasks were permanently removed and given to management personnel.  (Id. ¶ 24.)  In

3

February 2012, Marta Clark from the Human Resources Department required Parks to prove her responsibilities by comparing her actual job tasks with the systems administrator job description, which Parks alleges was an impossible task. (Id. ¶¶ 28, 29.) Beginning in November 2013 through March 2014, Parks's access to servers and data bases was removed and she was forced to ask her subordinate, Carnevale, for permission to access the resources she needed to complete her work. (Id. ¶¶ 30, 46.) By 2014, Parks's workload had been "reduced to almost none," with only one weekly task and one monthly task, and Parks was no longer included in technology meetings with vendors or management. (Id. ¶¶ 42-45.)

Parks further claims that management positioned her to fail. (Id. ¶ 25.) For example, in early 2014, Parks could not connect to the necessary computer drives to access reports she needed to complete her work, which caused her to be unable to set up schools and terminals to access necessary data. (Id. ¶ 27.) Parks also alleges that Carnevale would change procedures without telling her, which resulted in Parks making mistakes when she had to "process jobs and run production" in Carnevale's absence. (Id. ¶ 33.) Parks alleges that this situation created severe challenges, stress, and anxiety, but Kane, the Chief of Staff, would not resolve the issues. (Id. ¶ 34.)

Parks alleges that other African-American District employees experienced similar discrimination based on race. (Id. ¶ 57.) Larry Smith, a laborer, was continuously and publicly harassed; Tilden Brown, a truck driver, was harassed and "railroaded;" Carson Scales, the head bus driver, had his position eliminated and was replaced by three male, non-African-American routing specialists. (Id. ¶¶ 57-60, 66, 69.) Lamont Perry,

4

operations communications coordinator, had the majority of his tasks reassigned to his Caucasian co-workers who had less seniority and were less skilled.  (Id. ¶¶ 57, 61.)  Perry's requests for promotion were also ignored.  (Id. ¶¶ 61, 62.)

In January 2015, Parks filed a grievance with her union concerning her lack of promotions.  (Id. ¶ 70.)  The grievance was settled in July 2016, when Parks was promoted to senior systems analyst (grade 21), which was permanently certified in December 2016, two weeks before her retirement.  (Id. ¶ 70, 77.)  In the interim, on May 31, 2016, with Parks only six months from a full-service retirement at age 55, her systems analyst position was cut from the budget.  (Id. ¶¶ 51, 52.)  Parks was told that her department would be reduced "to a one-person shop," and that person would be Carnevale, a Caucasian female with less seniority.  (Id. ¶¶ 53, 56.)  In July 2016, Parks obtained a "placeholder" position in Buffalo City Hall that allowed her to complete her years of service and obtain a full retirement.  (Id. ¶¶ 54, 55.)  Then, as mentioned above, Parks was promoted to senior systems analyst in December 2016 as a result of her grievance.  (Id. ¶ 70.)  She retired two weeks later.  (Id.)

Before her retirement, Parks filed an official complaint with the District's Human Resources Department on April 28, 2016, but the complaint went uninvestigated.  (Id. ¶¶ 71, 72.)  Parks also advised the District's Human Resources Department that she had contacted the U.S. Equal Employment Opportunity Commission ("the EEOC").  (Id. ¶ 73.)  On June 20, 2016, Parks filed complaints with the EEOC.  (Id. ¶ 73 and Exhibit 1.)  She was issued a Right to Sue Letter on April 13, 2017, and filed her complaint in this action on July 10, 2017.  (Id., Exhibit 2.)

5

### III. DISCUSSION

Parks asserts discrimination and retaliation claims in each of four causes of action. She alleges that the District engaged in a pattern and practice of discrimination in the form of disparate treatment based on race and retaliated against her for having engaged in protected activity, in violation of Title VII (First Cause of Action[1]), § 296 of the NY HRL (Second Cause of Action), 42 U.S.C. § 1981 (b) through 42 U.S.C. § 1983 (Third Cause of Action), and the Equal Protection Clause of the Fourteenth Amendment through 42 U.S.C. § 1983 (Fourth Cause of Action).   (Complaint, ¶¶ 80-85, 86-90, 91-95, 96-100.)

The District seeks dismissal of each cause of action for failure to state a claim upon which relief can be granted, or, in the alternative, dismissal of all claims falling outside the applicable statutes of limitations periods.   See Fed. R. Civ. P. 12 (b)(6).

**A.    Rule 12 (b)(6)**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12 (b)(6).   In addition, if it appears from the face of the complaint that a cause of action has not been brought within the applicable statute of limitations period, the defense of limitations "may be raised in a pre-answer motion pursuant to Fed. R. Civ. P. 12 (b)(6)."   Santos v. Dist. Council of New York City, 619 F.2d 963, 967 n.4 (2d Cir. 1980); see also Ghartley v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.   Fed. R. Civ. P. 8 (a)(2).   But the plain statement must

---

[1] Parks seeks punitive damages on her Title VII claim.   (Complaint, ¶ 85.)

"possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557. When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires that the court draw on its judicial experience and common sense. See Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-

7

conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). But even where a document is "integral" to the complaint, it cannot serve as the basis for dismissal unless there is no dispute as to its authenticity, accuracy, and relevance. See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

**B.    The District's Motion to Dismiss**

   **1.    Statutes of Limitations**

"Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d

8

72, 78-79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5 (e)(1)); Duplan v. City of New York, 888 F.3d 612, 621-22 (2d Cir. 2018).  The United States Supreme Court has instructed that "employment practice" in this context refers to "a discrete act or single 'occurrence'," and that an employment practice occurs on the day it happens.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Therefore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id. at 113.  Accordingly, "[a] party . . . must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."  Id.

The statute of limitations for discrimination claims brought under the NY HRL is three years.  See N.Y. C.P.L.R. § 214 (2); Murphy v. Am. Home Prod. Corp., 448 N.E.2d 86, 93 (N.Y. 1983).  The statute of limitations for claims brought under the Civil Rights Act of 1991, 42 U.S.C. § 1981 (b), is four years because, as a federal statute enacted after December 1, 1990, § 1981 (b) is governed by 28 U.S.C. § 1658, not the personal injury statute of limitations of the forum state.  See Jones v. R./R. Donnelley & Sons Co., 541 U.S. 369, 382-83, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004); Morales v. County of Suffolk, 952 F. Supp. 2d 433, 436 (E.D.N.Y. 2013).  The statute of limitations for a § 1983 claim is "that which the State provides for personal-injury torts," which in New York is three years.  Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); see Berman v. Perez, No. 17-CV-2757 (JGK), 2018 WL 565269, at *2 (S.D.N.Y. Jan. 24, 2018) (citing Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013), in turn citing N.Y. C.P.L.R. § 214); see also Vega, 801 F.3d at 79 ("a plaintiff asserting a claim of

9

discrimination under § 1983 must file suit within three years of the adverse employment action").

Here, Parks lodged her complaints with the EEOC on June 20, 2016, and thereafter timely filed this action on July 10, 2017.[2] (Docket No. 1, Exhibit 1.) Consequently, her timely Title VII claims are those arising on or after August 25, 2015 (300 days before June 20, 2016); her timely NY HRL and § 1983 claims are those arising on or after July 10, 2014 (three years before July 10, 2017); and her timely § 1981 (b) claims are those arising on or after July 10, 2013 (four years before July 10, 2017). The District's motion to dismiss all other claims on statute of limitations grounds will therefore be granted.

### 2. Parks's Title VII and NY HRL claims

#### a. Parks's Title VII and NY HRL discrimination claims are adequately pleaded.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (a)(1). Similarly, the NY HRL provides that it shall be an unlawful discriminatory practice for an employer "to refuse to hire or employ or to bar or to discharge from employment [an] individual or to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment" on account of race. N.Y. Exec. Law § 296 (1)(a). Both

---

[2] Parks had 90 days from the date of her April 13, 2017 Right to Sue Letter (Docket No. 1, Exhibit 2) to file suit. See 42 U.S.C. § 2000e-5 (f)(1).

10

statutes are governed by the standards applicable to Title VII discrimination claims. See Deveaux v. Skechers USA, Inc., 19cv9734 (DLC), 2020 WL 1812741, at *3 (S.D.N.Y. Apr. 9, 2020) ("Discrimination claims brought under the NYSHRL are 'analytically identical' to Title VII claims.") (quoting Lenzi v. Systemax, Inc., 944 F.3d 97, 107 n.7 (2d Cir. 2019)).

At the pleading stage, of course, a plaintiff has no burden to demonstrate, establish, show, or prove her Title VII claim; she carries only the minimal burden of plausibly "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." See Vega, 801 F.3d at 87. That is, a plaintiff need not initially establish discrimination or allege facts concerning each element of the three-part, burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) that will ultimately govern the claim. See Littlejohn v. City of New York, 795 F.3d 297, 306, 311 (2d Cir. 2015); Vega, 801 F.3d at 82-84 ("[O]ur decision in Littlejohn makes clear that a plaintiff is not required to plead a *prima facie* case under McDonnell Douglas, at least as the test was originally formulated, to defeat a motion to dismiss.").

To state a Title VII discrimination claim under Iqbal and Twombly, a plaintiff must plausibly allege that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 87; Doe v. Columbia Univ., 831 F.3d 46, 55 (2d Cir. 2016); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006). More expansively, the Second Circuit has described the pleading obligation as follows: "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that

11

the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311.

The Second Circuit defines an adverse employment action as a "materially adverse change" in the terms and conditions of an individual's employment. Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004); Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

> To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Galabya, 202 F.3d at 640 (quotations, citations, and alterations omitted); see also Sanders, 361 F.3d at 755. Discrimination can be inferred from "the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge," Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009), or "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class," Littlejohn, 795 F.3d at 312-13 (collecting cases).

The District argues that Parks fails to state a claim because she did not suffer an adverse employment action and her allegations are too general. This Court's reading of the complaint reveals otherwise. Parks alleges that she is an African-American female; that the District took away her overtime opportunities; that the District eliminated her position in favor of retaining Carnevale, a Caucasian female with less seniority, and then

12

promoted Carnevale instead of her; and that the District did not subject her Caucasian co-workers to the same treatment. (Complaint, ¶¶ 6, 37, 38, 51, 53, 56.) The District largely ignores these allegations, but they are certainly sufficient to support Parks's Title VII claim at this stage. This Court therefore finds that the allegations in Parks's complaint are minimally sufficient to state a Title VII race-discrimination claim. See, e.g., Littlejohn, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage."). The District's motion to dismiss Parks's Title VII and NY HRL discrimination claims is therefore denied.

    **b. Parks's Title VII and NY HRL retaliation claims are adequately pleaded.**

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (a). Similarly, the NY HRL makes it unlawful for "any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296 (f). Both statutes are governed by the standards applicable to Title VII retaliation claims. See Rivera v. Rochester Genesee Reg'l Trans. Auth., 743 F.3d 11, 25 n. 8 (2d Cir. 2014) ("Retaliation claims under the [NY

13

HRL] are generally governed by the same standards as federal claims under Title VII.").

To state a retaliation claim under Title VII, a plaintiff must plausibly allege that "(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." Vega, 801 F.3d at 90. Broken down, a plaintiff must plausibly allege (1) that she engaged in protected activity; (2) her employer was aware that she engaged in protected activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. See Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016).

The concept of "adverse employment action" is broader for Title VII retaliation claims than for Title VII discrimination claims and encompasses any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S Ct. 2405, 165 L. Ed. 2d 345 (2006); Rivera, 743 F.3d at 25. And unlike a Title VII discrimination claim, a Title VII retaliation claim requires "but-for" causation: "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." See Univ. of Tex. Sw. Med. Ctr. v. Nassar, __ U.S. __133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013); Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013) ("'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."). In this regard, "a retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Vega, 801 F.3d at 89; Kwan,

14

737 F.3d at 845 ("the but-for causation standard does not alter the plaintiff's ability to demonstrate causation . . . through temporal proximity").

Examining Parks's complaint, she alleges that she opposed the District's employment practices by filing a union grievance in January 2015 that remained pending during the statute of limitations period; by filing a complaint directly with the District's Human Resources Department on April 28, 2016; and by notifying the District in April 2016 that she had also complained to the EEOC.  (Complaint, ¶¶ 70-73.)  Parks further alleges that the District eliminated her position and promoted her subordinate instead of her on May 31, 2016, just one month after she complained to the District's Human Resources Department and notified it that she had contacted the EEOC.  (Id. ¶¶ 51, 53, 71, 73.)  The District offers no specific reason why these allegations are insufficient to state a claim.  Given the District's clear notice of Parks's protected activity and the temporal proximity between that activity and the alleged adverse employment action, this Court finds that these allegations adequately state retaliation claims under Title VII.  The District's motion to dismiss these claims is therefore denied.

### 3. Parks's § 1981 (b) and Equal Protection claims

Section 1981, provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981 (a).  This "includes the making, performance,

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (b).

In the employment-discrimination context, § 1981 prohibits discrimination and retaliation "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) (finding that § 1981 encompasses retaliation claims); see also Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). The pleading standards for § 1981 (b) discrimination and retaliation claims are the same as for Title VII claims of the same sort.[3] See Bowman v. N.Y. State Hous. & Cmty. Renewal, 18 Civ. 11596 (ER), 2020 WL 1233701, at *5-6 (S.D.N.Y. Mar. 13, 2020); Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 990 n. 6 (S.D.N.Y. 2017) (collecting cases).

"The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). It is implicated, *inter alia*, "when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently."

---

[3] The United States Supreme Court recently held, however, that for § 1981 claims, a plaintiff must plausibly allege but-for causation: that but-for his or her race, he or she would not have suffered the loss of a legally protected right. See Comcast Corp. v. Nat'l Assoc. of African American-Owned Media, __ U.S. __, 140 S. Ct. 1009, 1019, __ L. Ed. 2d __ (2020) ("To prevail [on a § 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). Title VII discrimination claims, by contrast, require only that discrimination be a "motivating factor" in the employer's adverse action. See Vega, 801 F.3d at 87.

Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 607, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

A plaintiff claiming protected-class-based discrimination in public employment or retaliation in violation of the Fourteenth Amendment may bring suit under 42 U.S.C. § 1983.  See Naumovski v. Norris, 934 F.3d 200, 211 (2d Cir. 2019); Vega, 801 F.3d at 82.  The same pleading standards applicable to Title VII discrimination and retaliation claims apply, as do the § 1983 pleading requirements: "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Vega, 801 F.3d at 87-88 (quotation marks and citations omitted); see also Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (an "equal protection claim parallels [a plaintiff's] Title VII claim"); O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *7 (S.D.N.Y. Mar. 16, 2020); Rogers v. Roosevelt Union Free Sch. Dist., No. 09-CV-3862, 2012 WL 6163130, at *9 (E.D.N.Y. Dec. 7, 2012).

The complaint must plausibly plead that the defendant acted with "discriminatory intent," and that intent must ultimately have been a "but-for" cause of the adverse employment action.  See James v. John Jay Coll., 19cv644 (DLC), 2020 WL 1911211, at *6 (S.D.N.Y. Apr. 20, 2020) (quoting Naumovski, 934 F.3d at 214); see also Oliver v. N.Y. State Police, 1:19-cv-233 (BKS/DJS), 2020 WL 1849484, at *8 (N.D.N.Y. Apr. 13, 2020) ("To plead causation, the plaintiff must plausibly allege that the retaliation was the "but for" cause of the employer's adverse action, i.e., that 'the adverse action would not have occurred in the absence of the retaliatory motive.'") (quoting Vega, 801 F.3d at 90-

91, in turn quoting Kwan, 737 F.3d at 846). "Dismissal is appropriate where a causal connection is not alleged or reasonably inferred from the complaint." Id.

But even assuming a properly pleaded claim, municipalities and municipal entities such as school districts may be held liable under §§ 1981 and 1983 only if they are personally involved in the alleged deprivation. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36, 109 S., Ct. 2702, 105 L. Ed. 2d 598 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). Municipal liability therefore cannot be premised solely on a *respondeat superior* theory; it must be based on constitutional deprivations caused by an officially promulgated, or *de facto*, governmental "custom" or "policy[.]" Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986). Section 1983 thus imposes liability on a municipality only when its official custom or policy causes an employee to violate an individual's constitutional rights. See Monell, 436 U.S. 658 at 691.

The existence of such a policy or custom can be demonstrated in several ways, including: (1) showing an officially promulgated and endorsed municipal policy, Monell, 436 U.S. at 658; (2) showing that actions taken by officials with final policymaking authority caused a constitutional violation, Pembaur, 475 U.S. at 480–81; (3) showing that municipal decisionmaking evidences "deliberate indifference" to the rights of those with whom municipal employees come in contact, including failure to remedy an otherwise constitutional policy so deficient that policymakers knew or should have known with a high degree of certainty that constitutional violations could result, City of Oklahoma City v.

18

Tuttle, 471 U.S. 808, 819, 105 S. Ct. 2427, 2434, 85 L. Ed. 2d 791 (1985), or failure to train employees when training is necessary to prevent the violation of federal rights, City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). A plaintiff need not identify an express rule or regulation; it is sufficient if he shows "that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,' or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" Patterson, 375 F.3d at 226 (quoting Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992)).

The District first argues that Parks's § 1981 and Equal Protection claims must be dismissed because the District is not a "person" under § 1983. This is incorrect. "Municipalities and other local government bodies, including school districts, are considered 'persons' within the meaning of § 1983." Back, 365 F.3d at 128 (citing Jett, 491 U.S. at 735-36; Monell, 436 U.S. at 689); Frank v. Sachem Sch. Dist., 84 F. Supp. 3d 172, 193 (E.D.N.Y. 2015) ("Significantly, school districts, such as Sachem, are considered to be local governments and are subject to the same standards of liability as local governments under Monell.").

The District's other argument is that dismissal of these claims is required because the complaint fails to identify the policy, practice, or custom that allegedly caused the denial of Parks's rights. This Court disagrees. Parks alleges that the District engaged in a persistent pattern and practice of favoring Caucasian employees over African-American employees, including promoting Caucasian employees with less experience

19

and seniority over African-American employees. She alleges various examples of the allegedly widespread discriminatory practice, including the discrimination that she allegedly suffered. At this stage, these allegations are minimally sufficient to defeat the District's motion to dismiss under the standards for municipal liability set forth above. See Patterson, 375 F.3d at 226. The District's motion to dismiss these claims is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the District's motion to dismiss Parks's complaint is granted in part and denied in part. The District's motion to dismiss those claims falling outside the applicable statute of limitations is granted, but the motion is otherwise denied. The District will have 14 days from the entry date of this decision to file an answer consistent with Rule 12 (a)(4)(A).

## V.  ORDERS

IT HEREBY IS ORDERED, that the Motion to Dismiss (Docket No. 4) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Defendant shall file an answer within 14 days of the entry date of this decision consistent with Rule 12 (a)(4)(A).

SO ORDERED.

Dated:       April 30, 2020
             Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge